Robert J. Quinn *vs.* Edward F. Poole *d.b.a.* Armory Cab Co.

March 25, 1957.

Present: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

PAOLINO, J.   This action of trespass on the case for negligence arose out of a collision between two motor vehicles. The case was tried in the superior court before a justice thereof sitting with a jury and resulted in a verdict for the plaintiff.   The defendant's motion for a new trial was heard and denied..  The case is before us on his exceptions to the denial of that motion, to the trial justice's refusal to direct a verdict, and to the charge.   His other exceptions were waived.

The evidence shows that the collision occurred on January 1, 1953, at about 5 a.m. at the intersection of Mathewson and Fountain streets in the city of Providence, between two taxicabs, one owned and operated by the plaintiff and the other belonging to defendant and operated by his servant Nicholas Coesos.   At the time the weather was clear but there were several inches of snow on the ground. It was dark and the street lights were on, as were the lights of both vehicles.   The plaintiff, who was proceeding southerly on Mathewson street, paused momentarily on the crosswalk at the northerly curb line at the intersection.   He testified that he came almost to a complete stop at a point far enough out so that he could look up and down.   This was a blind corner.   Both streets were one way, the traffic on Mathewson street going from north to south and that

on Fountain street from west to east. Fountain street is approximately 60 feet wide, having room for at least six lanes. Mathewson street is between 20 and 30 feet wide, having room for about three lanes.

The plaintiff testified that he had chains on his taxicab at the time of the accident; that the snow was deep and loose; and that road conditions were bad. He also testified he had his car under such control that he could have stopped it at any time during the period he was traveling from the curb line at Mathewson street to the center of Fountain street, and that he felt he "was entitled to cross the street because of the big difference between the intersection and the spot where he [defendant] was."

When the plaintiff reached the curb line on the crosswalk he paused, looked to his right, and saw defendant's cab 200 feet away coming easterly down the center of Fountain street towards Mathewson street at a very rapid rate of speed. At the time there were no other machines there. He then looked ahead along Mathewson street and proceeded across the intersection at a speed of 5 to 10 miles an hour. When he was approximately at the center of the intersection he looked to his right for the second time and could see that defendant's vehicle was closer to him, possibly 30 or 40 feet away. The plaintiff testified that he estimated defendant's taxicab was going 35 to 40 miles per hour when the right rear end of his cab was struck by the front center of defendant's cab, and at the time of the collision his right rear fender was in the center of the intersection.

The operator of defendant's taxicab testified that he was driving easterly on Fountain street in the middle of the road at a moderate rate of speed, and that the weather was clear but Fountain street was "pretty icy." He stated his vehicle was equipped with chains and that he was not driving any faster than 15 to 20 miles per hour, although he admitted he had told a police officer after the accident that

he was going 25 miles per hour at the time of the collision. The plaintiff had testified that defendant's driver in his statement to the same police officer had said he was going 35 miles per hour.

The defendant's operator further testified that when he first saw plaintiff the latter was just at the curb line; that he, the witness, was 40, 50 or 60 feet up Fountain street in the center of the road and passing the Plaza Hotel; that when he saw plaintiff come out of Mathewson street he put on his brake; that plaintiff, who was looking in the opposite direction, kept going as if there was nobody coming down the street; and that after the collision plaintiff's car went over the curb and crashed into a store window. The defendant's other witness, who was a passenger in his cab at the time of the accident, testified in corroboration of defendant's driver.

The defendant argues that plaintiff, having seen defendant's taxicab coming down Fountain street at a very rapid rate of speed, failed to continue to observe it, and that "had he so looked, he would have been able to stop his automobile and have avoided the accident." He contends therefore that this omission on the part of plaintiff constituted contributory negligence as a matter of law, and that the trial justice should have directed a verdict for the defendant.

It is well established that if on any reasonable view of the testimony the plaintiff can recover on a motion for a directed verdict for a defendant, the case must be submitted to the jury. On such a motion the weight of the evidence and the credibility of the witnesses are not before the trial court for determination, but the evidence and the reasonable inferences therefrom must be construed most favorably to the plaintiff. *Reddington* v. *Getchell,* 40 R. I. 463; *Douglas* v. *First National Stores, Inc.,* 54 R. I. 278; *Kane* v. *Burrillville Racing Ass'n,* 73 R. I. 264.

After examining the transcript, we are of the opinion that

the evidence and all inferences which could be reasonably inferred therefrom as favorable to the plaintiff presented an issue of fact. It was for the jury to find whether plaintiff, in crossing Fountain street at a rate of 5 to 10 miles per hour after having seen defendant's vehicle approaching at a very rapid rate of speed from his right about 200 feet away, and in looking straight ahead until he reached the center of the intersection when he again glanced to his right and realized that an accident was imminent, acted in a reasonably prudent manner in all the circumstances then existing.

It is well established that the question of contributory negligence is generally one of fact to be determined by a jury, unless the evidence is so clear that only one reasonable inference can be drawn therefrom. *O'Donnell* v. *United Electric Rys.*, 48 R. I. 18; *Cunningham* v. *Walsh*, 53 R. I. 23. In our opinion the evidence in the instant case is not so clear that only one reasonable inference can be drawn therefrom, and it follows that the question of whether or not plaintiff was guilty of contributory negligence was properly submitted to the jury. *Simpson* v. *Gautreau*, 62 R. I. 309, 314.

The defendant has cited several authorities in support of his contention that the trial justice erred in not granting his motion for a directed verdict. We have carefully examined these cases, and in our opinion they all differ on the facts from the instant case. The general rules regarding the duty of drivers to look are well settled, but their proper application is affected by each set of facts. Cases arising out of the collision of vehicles at street intersections must usually be determined largely on the particular facts appearing in each case. *United Electric Rys.* v. *Pennsylvania Petroleum Products Co.*, 55 R. I. 154, 158. This exception is overruled.

The defendant contends that the trial justice erred in charging the jury that plaintiff was entitled to recover for

an aggravation of a pre-existing condition if such condition existed. The basis for his contention is the fact that no claim was made either in the declaration or in the bill of particulars that there was any aggravation of a pre-existing back condition. The pleadings did allege a low back injury and permanent injury "to lower back and left buttock, manifested by long duration and increase of pain in these areas." An examination of the transcript discloses no objection by the defendant to the introduction of evidence concerning a prior back injury of the plaintiff and its aggravation by this accident. Indeed defendant's counsel cross-examined at great length about previous back injuries suffered by plaintiff. This being so, the trial justice would be justified in charging the jury that they might consider this evidence of the effect, if any, of the instant collision on any pre-existing condition they may have found to exist. This exception is overruled.

The defendant has also filed an exception to the refusal of the trial justice to grant his motion for a new trial. This motion alleged that the verdict was against the law, against the evidence, and against the law and the evidence and the weight thereof. After carefully examining the transcript and the decision of the trial justice, it is our opinion that he did not err in so ruling. The defendant contends that the finding by the jury that plaintiff was in the exercise of due care is not warranted on the evidence as a matter of law. In this connection we have already pointed out that the evidence was conflicting in several material aspects. It was contradictory on the issues of fact as to the distance of defendant's vehicle from the intersection and also as to the speed at which he was traveling when plaintiff first saw him and also at the moment of collision.

The parties also differed in their testimony as to the condition of the road, the defendant's driver saying it was "pretty icy," whereas the plaintiff testified that the surface was covered with loose snow. There was also a direct con-

flict of evidence on the question of the direction in which the plaintiff was looking when he came out of Mathewson street and proceeded across Fountain street, plaintiff having testified that before he started to cross he looked to his right and that as he crossed he looked straight ahead until a short time before the collision. On the other hand defendant's evidence is that plaintiff was looking in the opposite direction.

The defendant also contends that the trial justice used language in his decision to the effect that he, the trial justice, would not have acted as plaintiff did in this case. The test, in a case such as this involving conflicting evidence, is what a person of ordinary prudence in like circumstances would have done. This was a question of fact for the jury. We are of the opinion that the trial justice, after reviewing the conflicting testimony, concluded that the evidence was such that different minds could reasonably and fairly come to different conclusions. We are of the further opinion that he exercised his independent judgment and decided that he should not disturb the verdict, even though his personal judgment might have inclined him to a different conclusion. *Arlia* v. *United Electric Rys.*, 64 R. I. 462, 466.

Our examination of the transcript reveals no evidence in favor of the defendant that would warrant us in sustaining this exception and granting a new trial. The jury could have reasonably found from the evidence that plaintiff was not guilty of contributory negligence, and the action of the trial justice in refusing to grant defendant's motion for a new trial was without error.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*Frank J. McGee, Edward I. Friedman, Irving H. Strasmich,* for plaintiff.

*Higgins & McCabe, Eugene V. Higgins,* for defendant.